Frank Ronkowski and Sophie Ronkowski v. Commissioner.
Ronkowski v. Commissioner
Docket No. 55537.
United States Tax Court
T.C. Memo 1956-276; 1956 Tax Ct. Memo LEXIS 17; 15 T.C.M. (CCH) 1441; T.C.M. (RIA) 56276; December 13, 1956
*17 Held, upon the facts, that petitioner, Frank Ronkowski, did not own any interest in the taxable years in a tavern business which was operated and owned by his nephew and another person, and that he did not realize any income during the taxable years from the business. George W. Koch, Jr., Esq., for the petitioners. Thomas J. Donnelly, Esq., and James T. Wilkes, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion For the year 1951, the Commissioner determined a deficiency in income tax in the amount of $295.64, an addition to the tax under section 294(d)(1)(A), 1939 Code, in the amount of $48.09, and an addition under section 294(d)(2) in the amount of $28.86. For the year 1952, the Commissioner determined a deficiency in income tax in the amount of $729.22, an addition to the tax under section 294(d)(1)(A) in the amount of $60.03, and an addition under section 294(d)(2) in the amount of $36.01. The question is whether the petitioners had any equity in and realized any income from a business known as the Bowery Tap during the taxable years 1951 and 1952. Petitioners deny that they were the operators and owners of the business, and contend *18 that they did not derive any income from the business in either of the taxable years. Findings of Fact Petitioners, husband and wife, are residents of Milwaukee, Wisconsin. Income tax returns were filed by the petitioners in both 1951 and 1952 with the collector of internal revenue for the district of Wisconsin. Frank Ronkowski, hereinafter called Ronkowski, has been employed as an inspector at the Keil Company which is located in South Milwaukee, Wisconsin, for a number of years, including both 1951 and 1952. His wages in 1951 and 1952 amounted to about $75 a week. He has had very little education or special training. In 1951 and 1952, and at present, he is unacquainted with ordinary business procedures. During 1952, the petitioner, Sophie Ronkowski, hereinafter called Sophie, was employed as a waitress. Arthur Maier is a nephew of Ronkowski. Neither he nor his wife Elsie were experienced in business nor acquainted with the simple requirements of keeping business accounting records and making income tax returns. Earl Connell was a bartender in O'Reilly's Tap in 1951. Later, he was a bartender at the Bowery Tap until sometime in March 1952. Connell's present occupation *19 is that of a factory worker. He is now employed by the Cornell Paper Board Company located in Milwaukee where he is a machine operator. In 1951 and 1952, Earl Connell and Elsie and Arthur Maier were all under 30 years of age. Sometime in 1951, Maier and Connell had an opportunity to purchase the tavern business known as the Bowery Tap from one Berk. In order to operate the tavern, it was necessary to receive a license from the City of Milwaukee. Neither Maier nor Connell had been residents of the City of Milwaukee for the time prescribed before issuance of such license. Maier then approached Ronkowski and requested that he, Ronkowski, apply for the necessary license in his name. Ronkowski, without obtaining any legal or business advice, consented and the license was issued in his name as owner of the Bowery Tap. Only Maier and Connell invested in the tavern. Maier had accumulated $1,500 and Connell borrowed $2,000 from a commercial loan agency, putting up his house as collateral. The balance of the purchase price was met by means of a loan from a commercial loan agency secured by a chattel mortgage on the premises signed by Ronkowski, Maier, and Connell, and a promissory note *20 to Berk's order executed by Maier and Connell. Because the license was issued in Ronkowski's name, the parties believed it necessary to carry out the subterfuge and have the lease to the premises put in his name. Having taken the first step, and not wishing to jeopardize Maier and Connell's investment, he took the second step. Ronkowski had no voice in the operation of the business. Bills were made out either in the name of Ronkowski, the Bowery Tap, or Maier and Connell. Insurance on the tavern was taken out in the name of Maier and Connell. Purchase agreements for large pieces of equipment, such as an ice machine, were signed by Maier and Connell. Either Maier or Maier and Connell together did all of the purchasing for the tavern. Maier and Connell opened a bank account for the tavern in their two names in the First Wisconsin National Bank. Either of them could make withdrawals and issue checks. Ronkowski had no part in the bank account and could not write checks on it. Withholding and social security tax forms were filed for the tavern employees in Ronkowski's name. Later, amended returns were filed, executed by Connell for 1951 and by Maier for 1952, showing Maier and Connell *21 as owners of the tavern. Maier and Connell jointly operated the tavern until March of 1952 when it became advisable for Connell to withdraw. Thereafter, Maier operated the tavern as a sole proprietor until some time in 1953. Ronkowski did not participate in any way in the operation of the tavern in either 1951 or 1952, and he was not an employee in the operation of that business during either of the taxable years. Ronkowski did not invest any money in the purchase or operation of the Bowery Tap in 1951 or 1952. Ronkowski did not receive, during 1951 or 1952, any funds from the tavern either as wages or as a share of the profits. The business did not prosper and in 1954 there were outstanding obligations of the business which could not be met. As the retail license holder, Ronkowski was liable on these bills representing debts of the tavern and in December of 1954 he filed a petition of voluntary bankruptcy. He was discharged in bankruptcy on August 15, 1955. Elsie and Arthur Maier filed income tax returns for 1951 and 1952, and as has been stated before returns were filed for Ronkowski. These returns were all prepared by Elsie. She was unacquainted with the preparation of income *22 tax returns and knew nothing of the legal aspects of business operations. In the petitioners' returns, Elsie included the petitioners' income from wages plus, in schedule C, the receipts and expenditures of the Bowery Tap. Ronkowski did not question the return; he signed it. He did not personally pay the tax shown as due thereon. In making out the schedules, Elsie used bills and receipts which she obtained from her husband and Connell. Deficiency notices have been issued by the Commissioner against Arthur Maier for income tax due upon earnings of the tavern for the years 1951 and 1952. Maier and Connell were joint venturers or partners in the operation of the business known as the Bowery Tap until the end of March 1952. Thereafter, Maier was the sole proprietor of the tavern business. Ronkowski was not a partner in the operation of the Bowery Tap, or a joint venturer, or an owner of any proprietary interest or equity in the business at any time during either 1951 or 1952, and he received no funds from the business either as wages or as a share of the profits during those years. The petitioners filed no declarations of estimated income tax for either 1951 or 1952. Opinion
*23 HARRON, Judge: The question presented by the pleadings is whether the petitioner, Frank Ronkowski, was the owner of any interest in the Bowery Tap business in 1951 or 1952, either as a partner, a joint venturer, or an investor, and, therefore, taxable on any part of the net income of the business. Petitioners' tax returns for 1951 and 1952 included in schedule C all of the income and deductions of the Bowery Tap business in 1951 and 1952, respectively. The Commissioner disallowed some of the deductions which were taken for Bowery Tap; the deficiencies result from such determinations. In their petition, the petitioners have claimed that schedule C should not have been filled in their returns and that they are not taxable on any part of the net income of the Bowery Tap because they did not own any interest therein and did not realize any income therefrom in either one of the taxable years. Ronkowski testified that he had no equity or proprietary interest in the tavern business in either 1951 or 1952, and that he did not receive any income in either year from the business, as profits or wages. This testimony is corroborated by the testimony of Maier and Connell. Upon the evidence *24 before us, it has been found that Ronkowski did not receive or realize any income from the Bowery Tap business during the taxable years. The Court is satisfied upon consideration of all of the evidence that Ronkowski did no more than erroneously allow his name to be used by his nephew, Maier, and Maier's partner Connell so that they could, through him, obtain the license from the City of Milwaukee needed to operate the tavern business. None of the parties involved had had previous business experience; they did not exercise good judgment in the procedures they followed. The record shows that once Ronkowski allowed his name to be used on the license, he thereafter, for consistency and so that the license would not be revoked, believed that he had to allow his name to appear, as owner of the tavern, in other various ways. One serious error led to another and Ronkowski became more deeply involved in the subterfuge. For all of this he is severely criticized by this Court. The question here is only whether he realized any taxable income in either 1951 or 1952 from the tavern business. This question is a question of fact, and upon the evidence it has been found and is concluded that he *25 is not taxable upon any income of the tavern business in 1951 and 1952. The Commissioner has issued deficiency notices against Arthur Maier for the years 1951 and 1952. All of the deficiency notices have been issued as a means of protecting the revenue. The record in this case shows that Arthur Maier now admits that he and Connell were the sole owners of the tavern business in 1951 and during the first three months of 1952, and that he was the sole proprietor during the last nine months of 1952. It appears that he now admits liability for any tax which may be due upon the income derived from the tavern business during the taxable years, at least to the extent of his interest in the business during each of those years. The problem before the Court is to determine what is true and what is false in the explanations presented of why Ronkowski's name appeared on various documents and why he filed a petition in bankruptcy. Maier's and Connell's testimony corroborates the testimony of Ronkowski. The Court having seen and heard all of the witnesses, concludes that Ronkowski's testimony is credible and worthy of belief, and that all of the interested persons are now truthfully stating what *26 was done. In so concluding, the Court does not condone in any way the acts of Ronkowski, Maier, and Connell, all of which were contrary to the requirements of local statutes relating to the obtaining of a license to operate a tavern. All three participated in deceptive, if not unlawful, practices. The Court has taken into account the youth of Maier and his wife, and of Connell, and Ronkowski's good record as a steady employee of the Keil Company, together with his lack of business experience and his limited education. Under the holding made above, it appears that the amounts of petitioners' taxable income during the taxable years were such that they were not obliged to file declarations of estimated tax, and that they did not underestimate their income tax in a substantial amount for each year. Accordingly, the additions to the tax for each year determined by the respondent under sections 294(d)(1)(A) and (d)(2) must fall. If this assumption should prove to be incorrect upon making recomputations under Rule 50, the parties will agree upon the correct additions to tax under the above sections, if any. Although the issue presented is decided for petitioners, it is possible that tax *27 withheld by employers of the petitioners may not have been sufficient to discharge their correct income tax liability for both or one of the taxable years. Therefore, the parties are given the opportunity under Rule 50 to ascertain whether the petitioners' correct tax liability, under the holding made here, has been discharged by their tax payments. Decision will be entered under Rule 50.